IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**TIMOTHY DAVID DANKO**

          Petitioner,

**v.**

**UNITED STATES OF AMERICA**

          Respondent.

**Civil Action No.: 1:16CV64**
**Criminal Action No.: 1:08CR80**
**(JUDGE KEELEY)**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On April 14, 2016, Timothy David Danko (Petitioner), proceeding *pro se*, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion"). (Civil Action No. 1:16CV-64, ECF No. 1; Criminal Action No. 1:08CR80, ECF No. 42).[1] Following a Notice of Deficient Pleading [ECF No. 45], Petitioner filed his § 2255 motion on the court approved form. ECF No. 49.

The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing or requiring an answer from Respondent. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion.

### II.   FACTS

#### A.  Conviction and Sentence

---

[1] From this point, Document Numbers refer to entries in Criminal Action No. 1:08cr80.

Petitioner was the sole defendant named in a two count Information filed on September 11, 2008. ECF No. 4. In Count One, Petitioner was charged with stealing firearms from a federal firearms licensee in violation 18 U.S.C. § 922(u). In Count Two, Petitioner was charged with conspiracy to receive and sell stolen firearms in violation of 18 U.S.C. § 922(j). (ECF No. 37).

On August 27, 2008, Petitioner signed a plea agreement in which he proposed to plead guilty to both counts. ECF No. 5. The agreement provided that mandatory restitution was required in this case. In addition, by signing the agreement, Petitioner acknowledged that the United States Sentencing Guidelines are now advisory and no longer mandatory. Accordingly, the agreement expressed the understanding that the sentencing court could ascertain and impose a sentence below or above the applicable Guideline range, so long as that sentence was reasonable and within the statutory maximum specified in Title 18 of the United States Code for the offense of conviction. Notwithstanding this understanding, the Agreement provided that Petitioner retained his appellate rights and rights to collaterally attack his sentence only with respect to any sentence imposed using a total offense level 25 or higher.

Petitioner appeared before former United States Magistrate Judge John S. Kaull for purposes of a Rule 11 hearing on October 27, 2008. Petitioner signed a Waiver of Indictment in open court, and Magistrate Judge Kaull then heard testimony from Special Agent Joseph Price. Based on that testimony and an investigation in the Western District of Pennsylvania, Magistrate Judge Kaull continued the plea hearing until October 29, 2008. On October 29, 2008, Petitioner again appeared before Magistrate Judge Kaull with counsel and confirmed that he understood all of his rights, had

reviewed the two count Information, understood the maximum sentences that the district

court could impose and further understood that the sentences could be either

concurrent or consecutive. Based upon Petitioner's statements during the plea hearing

and the testimony of Special Agent Joseph Price, the Magistrate Judge accepted his

guilty plea, finding that Petitioner was competent to enter a plea, that the plea was freely

and voluntarily given, that Petitioner was aware of the nature of the charges against him

and the consequences of his plea, and that a factual basis existed for the tendered plea.

The Magistrate Judge then ordered that a presentence report be prepared, and

sentencing was set for March 6, 2009. ECF No. 22.

Petitioner appeared before the Honorable Irene M. Keeley, United States District

Judge, for sentencing on March 16, 2009. ECF No. 50. Petitioner was represented by

Counsel, Richard L. Walker. Judge Keeley accepted Petitioner's plea agreement and

his guilty plea.  At sentencing, the amount of restitution owed to Dawn Tatar was

discussed:

> THE COURT: Because from what I can gather, this is her estimate of what
> she thinks the damage was that Mr.  Danko did and I'm not sure if she's
> qualified to make that estimate or if she has made that estimate based on
> what someone else has told her. All right. I know the defendant has not
> objected.
>
> MR. WALKER: No, Judge, we don't--we want there to be accuracy so to
> the extent that this Court wants to ask questions, we don't object to that
> but we--Mr. Danko wants to make the victims whole.

Id. at 13: 4-2.

Dawn Tatar was present at the sentencing hearing. She was sworn in and

testified on increasing the amount of restitution from $1,500 to $3,850.60:

> THE COURT: So as I understand the testimony from Ms. Tater, the
> contractor who was brought in to shore up the original repairs and to stop

3

the leaks is the one who stated that the--about half of what he charged was the result of the area of the roof that had been damaged when Mr. Danko cut through the two sections of the roof. Now I know it's hearsay but this is a sentencing hearing and it's acceptable to me to take it because this is the only way I'm going to find out. I just couldn't tell from the statement from Keener Contracting how that had been determined so that when Ms. Tater included it in her February 24th, 2009 submission, you know, whether it was just, well let's divide the baby or whether there was some basis for it but I'm satisfied that there is a factual basis for that and--so, therefore, before we go any further I want to make sure the parties agree with me that the restitution will be $8,748.22 to Mr. Pochran at True Value Hardware and $3,625.60 to Ms. Tater at West Virginia Jewelry and Loan for a total restitution of $12,373.82.

MR. COGAR: Your Honor, I think the loss for Ms. Tater is $3,850.60.

THE COURT: Oh, that's right, the two hundred--well, wait a minute. (Pause)

THE COURT: Oh, that's right, I forgot about that. She wanted money for the employees but that's not proper restitution, is it?

MR. COGAR: We would argue that it was, you know, consequential. I understand that--that they had--the employees had—

THE COURT: We don't--I don't think we have any documentation on that, do we? We don't have any documentation so I had just considered--I mean I know she submitted it but there's no documentation. If she has documentation I'm happy to hear from her about it. Documentation is the key to this. That's it.

MR. COGAR: I understand, Your Honor. Your Honor, that's fine to reduce the restitution amount by that much.

THE COURT: Okay. All right. So $3,625.60. I mean if there is--you know I can leave it open for ninety days so she can get the documentation to me if she's got employee payroll records.

MR. COGAR: Your Honor, she can submit payroll records within that time.

THE COURT: So today is March the 16th, by March--Monday, March the 30th and then I can just do an amended J&C with the final restitution number in it. Those were the only issues. Are there any--prior to the variance issues that Mr. Walker's going to raise, but is there anything else before I calculate the guidelines?

4

MR. COGAR: Not from the United States, Your Honor.

THE COURT: Okay.

MR. WALKER: No, thank you.

Id. at 18- 20.

On March 31, 2019, Judge Keeley entered judgment and committed Petitioner to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 120 Months on Count One and 10 Months on Count Two to run consecutively to Count One. Both sentences were ordered to run consecutively to his Pennsylvania sentence. In addition, the judgment provided that Petitioner would pay restitution in the amount of $12,373.82. More specifically, Petitioner was ordered to pay restitution in the amount of $3625.60 to Victim #1 and $8748.22 to Victim #2.  ECF No. 35 at 5.

The amount of restitution to Victim # 2, Dawn Tater, is the same amount discussed at the sentencing hearing at which Petitioner was present, and is the amount reflected in the Pre-Sentence Report which was amended on March 9, 2009. With respect to the restitution owed Dawn Tater, the PSR provided as follows:

> Mrs. Dawn Tatar submitted the following losses as a result of the offense . . . for a total amount of $1,500.00. On March 3, 2009, the Probation Officer received additional information including verification of restitution due to West Virginia Jewelry and Loan. However the Probation officer concludes pursuant to U.S. v. Samuel Bush Wright, 176 Fed.Appx. 373 (4th Cir. 2006), "the amount of restitution due to firearms dealer could not include the costs of security personnel after burglary by the defendant, as those costs were consequential damages." Therefore the amount of restitution due and owing to West Virginia Jewelry and Loan is $3,625.60.

ECF No. 37 at 8.

## B. Federal Habeas Corpus

### 1.     Petitioner's Motion

In his Court-Approved Motion, Petitioner raises the following claims:

1.  Petitioner's counsel was ineffective for failing to advise Petitioner or object to the amended PSR that raised his restitution to Tatar from $1,500 to $3,625.60; and

2.  The District Court relied on unverified, fraudulent declarations of victim loss to determine restitution to Tatar.

### III.   ANALYSIS

A federal district court must liberally construe petitions filed by a pro se litigant to allow the development of a potentially meritorious case. Moore v. Warden, FCI Edgefield, No. CA 2:11-02086-RBH, 2011 WL 5827607, at *1 (D.S.C. Oct. 28, 2011). However, even under the less stringent standard, pro se petitions are still subject to summary dismissal. "The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which are set forth a claim currently cognizable in federal district court." Id. (citing Weller v. Dep't of Soc. Serv., 901 F.2d 387 (4th Cir. 1990)).

Although partially couched as an ineffective assistance of counsel claim, Petitioner's sole allegation of error relates to the restitution portion of his sentencing order, and in particular the restitution ordered paid to Dawn Tater. However, 28 U.S.C. § 2255(a) provides as follows:

> A prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Because the plain language of the statute relates to a prisoner claiming the right to be released from custody, it may not be used for the sole purposes of challenging fines or restitution orders.  See U.S. v. Hudgins, 201 Fed. Appx. 142 (4th Cir. 2006); See also, United States v. Bernard, 351 F.3d 360, 361 (8th Cir. 2003) (collecting cases). Instead such challenges should be raised on direct appeal or in a § 2241 petition. See Moore v. Warden, FCI Edgefield, 2011 WL 5827607, at *1 (D.S.C. Oct. 28, 2011); U.S. v. Hudgins, 201 Fed.Appx. 142 (4th Cir. Sept. 25, 2006).

In summary, Petitioner's pro se motion under 28 U.S.C. § 2255 is inappropriate because he seeks only to contest the amount of his restitution owed. See Moore, at *2. Petitioner alleges no facts in his § 2255 motion or his memorandum in support that suggest he is seeking release from custody, and accordingly, he has improperly filed a § 2255 Motion. To the extent that Petition may bring this claim pursuant to § 2241, this Court lacks jurisdiction to entertain the same. A § 2241 petition must be brought in the district of incarceration, 28 U.S.C. § 2241(a); In re Jones, 226 F.3d 332 (4th Cir. 2000), and Petitioner is incarcerated at a federal correctional institution located in White Deer, Pennsylvania.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned recommends that Petitioner's § 2255 petition be **DENIED and DISMISSED WITHOUT PREJUDICE** to his right to file a § 2241 in the District Court having jurisdiction over FCI Allenwood, where he is presently incarcerated.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections

identifying the portions of the Recommendation to which objections are made and the

basis for such objections. A copy of such objections should also be submitted to the

Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections

to the Recommendation set forth above will result in waiver of the right to appeal from a

judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);

Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);

United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208

(1984).

The Clerk of the Court is directed to mail a copy of this Report and

Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to

his last known address as reflected on the docket sheet.

**DATED:** June 20, 2017

*/s Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE